AUSTIN RAMSEY V. R. C. GLENN.

33  271
51  576

1. CHATTEL MORTGAGE—*Following Property.* If a chattel mortgage executed in Missouri is valid by the law of that state, it is valid *inter partes* in this state; and if the property embraced in such chattel mortgage is removed by the mortgagor to this state, the mortgagee may follow the property to this state and take possession of the same under the terms of the mortgage.

2. CHANGE OF POSSESSION; *Filing.* A chattel mortgage is void as against the creditors of the mortgagor, unless it be accompanied by delivery and possession, or is deposited in the office of the register of deeds in the manner prescribed by the statute. (Comp. Laws of 1879, ch. 68, § 9.)

3. ATTACHMENT; *Chattel Mortgage; Prior Lien.* If a creditor of the mortgagor of a chattel mortgage levies upon the property embraced in the mortgage, not accompanied by delivery and possession, before the mortgage is deposited in the office of the register of deeds in the manner prescribed by the statute, the attachment is a prior lien to the chattel mortgage.

*Error from Brown District Court.*

ON March 25, 1882, *Austin Ramsey* was a farmer living in Holt county, Missouri, and had dependent upon him for support eight children, the oldest being twenty-one years and the youngest three years of age. His property consisted of three work horses, a lumber wagon, a set of harness, some house and kitchen furniture, beds with bedding, and stoves. At the time, he was indebted to one R. M. Guilliams in the sum of $150, and was also indebted to other persons. On said March 25 he executed to Guilliams his note for $150, payable in nine months, and to secure the payment thereof executed a chattel mortgage on said property, including the sorrel horse in controversy. This chattel mortgage was recorded at four o'clock P. M. on March 27, 1882, in the office of the recorder of deeds in Holt county, Missouri. On March 27, 1882, Ramsey started from Holt county, with his family and the said property, for Brown county, Kansas, intending to make Brown county his home. Upon this day, before the chattel mortgage to Guilliams was filed for record, and before Ramsey got out of Holt county, Missouri, a creditor of Ram-

sey, one *R. C. Glenn*, attached all the property Ramsey owned, except the said sorrel horse. The same day Ramsey arrived in Brown county, Kansas, with his family and his sorrel horse, and has ever since made it his home. The claim of Glenn against Ramsey was $61. After the attachment of Glenn had been levied upon the property, Guilliams, the owner of the chattel mortgage, claimed the property, and filed an interplea therefor before a justice of the peace. Upon a trial in the justice's court, Guilliams was successful with his interplea, but from the judgment thereon Glenn appealed to the circuit court of Holt county. Ramsey made no defense to the action of Glenn, nor to the attachment proceedings. The property attached by Glenn was sold on April 9, 1882, under the attachment proceedings, for $158.50. After paying the costs of keeping and sale, there was a balance left of $137.50. The judgment of Glenn *v.* Ramsey, and costs, were paid out of this, and there was still a balance from the proceeds of said attached property.

While the appeal was pending in the circuit court of Holt county, upon the interplea filed by Guilliams, and on January 11, 1883, Glenn allowed and paid Guilliams the amount then due on the note and mortgage executed by Ramsey March 25, 1882, and took an assignment of the note and mortgage from him. On January 11, 1883, the chattel mortgage was filed for record with the register of deeds of Brown county, and on the same day Glenn commenced his action in replevin against Ramsey, before a justice of the peace of Brown county, to recover the possession of the sorrel horse described in the chattel mortgage. After judgment had been rendered before the justice of the peace of Brown county, the case was appealed to the district court of that county. Trial at an adjourned term of the October Term for the year 1883. The case was submitted to the court without a jury. The court found that *R. C. Glenn*, the plaintiff, was, at the commencement of the action, entitled to the possession of the horse, and that being in possession of the horse at the time of such trial, he was entitled to retain the same, and also that he was en-

titled to recover his costs. Judgment was entered accordingly. The defendant, *Ramsey*, excepted, and brings the case here.

*Jas. Falloon*, for plaintiff in error.

*A. R. May*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: It is claimed on the part of the plaintiff in error, defendant below, that when Glenn paid off the note of one hundred and fifty dollars, executed on March 25, 1882, by Ramsey to Guilliams, the effect thereof was a full payment of the note, and hence satisfaction of the chattel mortgage given to satisfy the same. Further, that when Glenn attached the mortgaged property of Ramsey, the interplea of Guilliams brought the parties before the justice on the validity and priority of the chattel mortgage and attachment of the property, and that the decision was in favor of the priority of the mortgage. Finally, that Glenn could not first apply the proceeds arising from the mortgaged property to the payment of his judgment and costs in the attachment action, and then apply the remainder upon the mortgage debt.

In answer, it may be said that when Glenn paid Guilliams for the note and mortgage of Ramsey on January 11, 1883, and took a written transfer and assignment thereof to himself, that this was an actual purchase of the note and mortgage; and hence the transaction was not a mere satisfaction of the note and mortgage.

While the interplea of Guilliams brought the parties before the justice of the peace to test the validity and priority of the mortgage and attachment, yet, after the appeal from the decision of the justice, the judgment was vacated. After Glenn purchased the note and mortgage, Guilliams abandoned his interplea, and no judgment was rendered in the circuit court that the chattel mortgage was paramount to the attachment. If we are to be controlled by the laws of Missouri, the mortgage had no validity against the attachment. (Wagner's Rev. Stat. of Mo., p. 287, § 8; *Foster v. Gillespie*, 68 Mo. 644.)

18—33 KAS.

On the other hand, if we assume that the laws of Missouri are the same as the laws of Kansas, then we must also decide that the attachment lien was prior to the chattel mortgage. (Laws of 1879, ch. 68, § 9; Jones on Chattel Mortgages, § 177.) Guilliams did not take actual possession of the mortgaged property upon the execution of the mortgage, and did not deposit the mortgage in the office of the register of deeds until after the levy of the attachment. (Sec. 9, ch. 68, *supra.*) The property levied upon in Missouri was sold under the attachment proceedings instituted there. The judgment and costs were paid, and there was not sufficient of the proceeds to satisfy the chattel mortgage. As the remainder of the note was due and unpaid, Glenn was entitled, under his chattel mortgage, to the possession of the sorrel horse wherever he could find it. As Ramsey refused to deliver possession thereof, Glenn had no other recourse than to commence his action to recover by law the possession of the animal. The removal of the horse from Missouri, by Ramsey, into Kansas, did not change the status or rights of property or the parties. As the owner of the note and chattel mortgage, Glenn had the right to follow the property to Kansas and take possession of it. (*Denny v. Faulkner*, 22 Kas. 97; *Feurt v. Rowell*, 62 Mo. 524; *Smith v. Hutchings*, 30 id. 380.)

Is is said that the court committed error in permitting Glenn to testify concerning the record of the actions in Missouri between him and Ramsey, and between him and Guilliams. It does not appear from the record that any exceptions were taken on the trial to the introduction of evidence, and it is too late, at this time, to present any objection thereto. All of the evidence appearing in the record was submitted to the court, by the parties, without exceptions, and upon this evidence the court could not do otherwise than find for the defendant in error, plaintiff below.

The judgment of the district court will be affirmed.

All the Justices concurring.